**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FAUSTINO CHAPA, IV, on behalf of himself and others similarly situated, | ) ) | Case No. 1:13-cv-03957 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Judge Harry D. Leinenweber |
| | ) | |
| TRUGREEN, INC., | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND FOR**
<u>**SERVICE AWARD TO THE CLASS REPRESENTATIVE**</u>

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, prohibits making automated telephone calls to cellular telephones without the "prior express consent" of the recipient. This case alleges that Defendant TruGreen, Inc. ("TruGreen") made such calls to plaintiff and approximately 214,000 other consumers, nationwide. TruGreen adamantly denies that it did anything wrong.

After protracted settlement discussions, including two full-day mediations with Hon. Wayne Andersen (ret.), the parties reached a proposed class action settlement, which the Court preliminarily approved on September 24, 2014. The settlement calls for a lump-sum common fund of $4,450,000 for the benefit of the Settlement Class. Pursuant to the Court-approved notice plan, notice and claim forms were sent by first-class mail to the class on October 24, 2014. As of the day before this filing, <u>14,142</u> claims had been received by the settlement administrator, along with <u>7</u> opt-outs. There have been no objections. Burke Decl., <u>Exhibit A</u>, ¶19.

Plaintiff respectfully requests that the Court approve attorneys' fees of one-third of the common fund, or $1,483,333, and a $12,000 service award for the named plaintiff. As explained

below, the requested amounts are in-line with the market rate for similar attorney services in this jurisdiction, and fairly reflect the result achieved. Similarly, the requested $12,000 service award is comparable to other TCPA cases, and should be approved. TruGreen does not to oppose this motion.

## I.     __Background.__

  The Settlement preliminarily approved by this Court requires TruGreen to pay a Settlement Amount of $4,450,000, which will be paid on a *pro rata* basis to Settlement Class Members who submit valid claim forms, after payment of administration costs, awarded attorneys' fees, and any incentive award to the class representative.  (Agr. ¶¶ 2.36, 5.1(b).)

  The settlement is non-reversionary, except that money left over from uncashed checks could conceivably end up going back to TruGreen. Under the settlement, money from uncashed checks goes to a court-approved *cy pres* recipient. (Agr. ¶ 5.4)  If for some unforeseen reason *cy pres* is held to be impermissible, then money from uncashed checks is to be redistributed among class members who sent in claim forms. (Agr. ¶ 13.4). It is only if *cy pres* is impermissible and if there is money left over after redistribution that any funds would revert to TruGreen. Class Counsel views any reversion to TruGreen as extremely unlikely.[1]

  Notice was sent to all class members by United States mail, and total notice and administration costs are expected to cost approximately $250,000. If the Court were to approve the requested attorneys' fees and service award, class members would receive in excess of $150 each.

_____

[1] There is also a $500 cap per *pro rata* claim, which could possibly also lead to a reversion if *cy pres* were ruled to be impermissible. However, given the number of claims received so far, it seems extremely unlikely that the $500 cap will be triggered.

## II.    <u>Standard of Review.</u>

The Seventh Circuit has instructed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases).  Compensation also depends "on the quality of [counsel's] performance, . . . in part on the amount of work necessary to resolve the litigation, and in part on . . . the stakes of the case." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N.D. Ill. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d at 721).

The "common fund" doctrine applies where, as here, litigation results in the recovery of a certain and calculable fund on behalf of a group of beneficiaries.  The Seventh Circuit and other courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have a right to be compensated from that fund for the successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole[.]"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("Once a settlement has been reached in a class action, the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit.").

In common fund cases like this one, courts have discretion to use one of two methods to determine fees: (1) percentage of the fund; or (2) lodestar plus a risk multiplier.  S*ee, e.g.*, *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a

percentage of the benefit conferred on the class." *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-7410, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995) (citations omitted); *see also Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund[.]") (citations omitted); *Silverman v. Motorola, Inc.*, No. 07-4507, 2012 WL 1597388, at *4 (N.D. Ill. May 7, 2012) ("It is unnecessary to resort to a lodestar calculation[.]"); *George v. Kraft Foods Global, Inc.,* Nos. 08-3799, 07-1713, 2012 U.S. Dist. LEXIS 166816, at *7 (N.D. Ill. June 26, 2012); *Long v. Trans World Airlines, Inc.*, No. 86-7521, 1993 WL 121824, at *1 (N.D. Ill. Apr. 19, 1993) (awarding attorneys' fees of 32% of the settlement fund, plus expenses, "in keeping with the increasingly prevailing view that the percentage fee method proposed in this case is appropriate in common fund cases").

The Supreme Court has explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). While the Court must perform its own evaluation to verify that the requested fees are not the product of collusion, it should give weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms. *See, e.g., Mangone v. First USA Bank,* 206 F.R.D. 222, 226 (S.D. Ill. 2001).

## III.   Argument.

### A.   The Court Should Apply the Percentage of the Fund Method.

Attorneys who recover a common fund for the benefit of a class are entitled to a reasonable fee from the fund as a whole. In a recent TCPA case, *Holtzman v. Turza*, 728 F.3d

682, 684 (7th Cir. 2013), Judge Easterbrook calculated that one-third of each class member's

recovery arising out of a class-wide judgment would be the "appropriate" amount of fees.

The Seventh Circuit's statement in *Holtzman* is consistent with substantial previous

authority. "[T]he approach favored in the Seventh Circuit is to compute attorney's fees as a

percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. &*

*Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *9 (N.D. Ill. Nov. 30, 2011). Courts should

"do their best to award counsel the market price for legal services, in light of the risk of

nonpayment and the normal rate of compensation in the market at the time." *Id.* The market

price "'depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality

of its performance, in part on the work necessary to resolve the litigation, and in part on the

stakes of the case.'" *Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (quoting *Synthroid*,

264 F.3d at 721).

"[T]here are advantages to utilizing the percentage method in common fund cases

because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d

560, 566 (7th Cir. 1994). As one Court in New York succinctly stated:

> The percentage method is bereft of largely judgmental and time-wasting
> computations of lodestars and multipliers. These latter computations, no matter
> how conscientious, often seem to take on the character of so much Mumbo
> Jumbo. They do not guarantee a more fair result or a more expeditious
> disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989);

see also *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to

establish market based contingency fee percentages than to "hassle over every item or

category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F.

Supp. 382, 386 (N.D. Ill. 1996) ("[T]he percentage of fund method provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

Class Counsel's request for fees is reasonable because it represents the market price for the legal services provided. *See In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18; *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 568, 572 ("It is not the function of judges in fee litigation to determine the equivalent of the medieval just price . . ." and counsel is "entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

Moreover, it makes *more* sense to apply the percentage of the fund method in TCPA cases than in other similar contexts, because of the tension between the fact that the TCPA is not fee-shifting, and the $500-$1,500 per violation damages provisions. 47 U.S.C. §227(b)(3). No rational client would pay any attorney's hourly rate for prosecuting a case like this, because the fees would exceed the maximum potential recovery before the complaint was filed. The market therefore demands that attorneys and clients agree upon fees as a percentage of the client's recovery; typically between one-third and 40%. The fee agreement between Class Counsel and Mr. Chapa calls for fees of 40%; substantially less than the $33^{1/3}$% percentage sought from the class recovery.

### B. One-Third of the Common Fund is the Market Rate for TCPA Cases.

Courts, including the Seventh Circuit, have "recognized the appropriateness of relying on analogous class action settlements to determine the reasonableness of attorneys' fees." *In*

*re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *15

(citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (quotations omitted)).

    Here, the requested fee of one-third of the total Settlement Amount is on par with

attorneys' fees consistently awarded in TCPA class litigation in this District. *Martin v. Dun &*

*Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 66 (awarding one-

third fee payment of distributed fund); *Cummings v Sallie Mae*, No. 12-9984 (N.D. Ill. May 30,

2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v.*

*Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-

third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013)

(Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign &*

*Display Co. v. Topsail Sportswear*, *Inc.*, No. 08-05959 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (Dkt.

No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab*

*House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (same); *Saf-T-*

*Gard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-00776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No.

100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-05953 (N.D. Ill. Nov. 1, 2010)

(Kendall, J.) (Dkt. No. 146) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-01156 (N.D. Ill.

Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 07-07033 (N.D. Ill. Sept.

30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-00066

(N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).[2]  Moreover, many of the above cases

included large reversions to the defendant; a feature not present in this settlement.

---

[2] Courts in other jurisdictions have awarded a similar percentage of the common fund in TCPA settlements. *See, e.g., Locklear Elec., Inc. v. Norma L. Lay*, No. 09-00531 (S.D. Ill. Sept. 8, 2010)

Class Counsel's request is also on par with the 33⅓% reasonable market price consistently awarded in other common fund, non-TCPA cases within the Seventh Circuit, as well. *See, e.g., In re Plasma Derivative Protein Therapies Antitrust Litig.*, No. 09-07666, (N.D. Ill. Apr. 16, 2014) (awarding 33.3% of the $64 million settlement fund in Sherman Act case) (Gottschall, J.) (Dkt. No. 703); *Beesley v. Int'l Paper Co.,* No: 06-703, 2014 U.S. Dist. LEXIS 12037, at *7-10 (S.D. Ill. Jan. 31, 2014) (awarding $10,000,000 fee (and over $1.5 million in costs) constituting one-third of the total common fund); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908-09 (S.D. Ill. 2012) (approving one-third fee of over $32 million and noting that "the market price for fee awards is the amount of court-awarded attorneys' fees in comparable cases.") (citing *Taubenfeld,* 415 F.3d at 599); *George v. Kraft Foods Global, Inc.,* Nos. 08-3799, 07-1713, 2012 U.S. Dist. LEXIS 166816, at *8 (N.D. Ill. June 26, 2012) ("'[T]he normal rate of compensation in the market [is] 33.33% of the common fund recovered' because the class action market commands contingency fee agreements and the Class counsel accepts a substantial risk of nonpayment."); *McDaniel v. Qwest Commc'ns Corp.*, No. 05-1008, 2011 U.S. Dist. LEXIS 154591, at *11-12 (N.D. Ill. Aug. 29, 2011) ("As decisions of the Seventh Circuit have confirmed, the  real-world market range for contingent fee cases is 33% to 40%."); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 2011 U.S. Dist. LEXIS 157910, at *18-19 (citing cases and finding a 32.7% common fund fee to be reasonable and within the market rate); *Schulte*, 805 F. Supp. 2d at 598 ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the

---

(awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. v Verizon Wireless*, No. 03-161, 2007 WL 7087615, at *2 (M.D. La. Aug. 2, 2007) (awarding 36.5% of the $6,340,625 common fund plus costs).

reasonable range."); *In re Ready-Mixed Concrete Antitrust Litig.*, No. 05-00979, 2010 WL 3282591, at *3 (S.D. Ind. Aug. 17, 2010) (finding that "the 'market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time' is a contingent fee in the amount of one-third (1/3) of the common fund recovered") (quoting *Sutton*, 504 F.3d at 692).; *Meyenburg v. Exxon Mobil Corp.*, No. 05-15, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation.") (citation omitted); *Goldsmith v. Tech. Solutions Co.*, No. 92-4374, 1995 WL 17009594, at *8 (N.D. Ill. Oct. 10, 1995) ("It seems therefore, that the fees being requested in this case, i.e. 33 1/3%, are in fact in line with that which has, in previous cases, been approved. Thirty three percent appears to be in line with what attorneys are able to command on the open market in arms-length negotiations with their clients."); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (finding that "the market for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing that "a one-third fee is consistent with the market rate."). As is the case here, these cases likewise use the percentage of the *total* fund, and do not deduct the costs of notice and administration from that total.

The customary fee arrangement with private litigants and their attorneys in this Circuit is 33% to 40% of the total recovery. *See Gaskill*, 160 F.3d at 362-63 (Seventh Circuit noting that typical contingency fees are between 33% and 40%, and affirming award of 38%); *Kirchoff v. Flynn,* 786 F. 2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation

settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP,* No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 6, 2001) (recognizing that a customary contingent fee is between 33 1/3% and 40%, and awarding class counsel the requested one-third of the common fund) (citation omitted).

Indeed, plaintiff Chapa's retainer with his lawyers in this matter is a contingency agreement that calls for attorneys' fees equaling 40% of his recovery. Burke Decl., <u>Exhibit A</u>, ¶ 13; Kleinpeter Decl., <u>Exhibit B</u>, ¶ 14. Moreover, when the undersigned began litigating TCPA cases in around 2008, Burke Law Offices, LLC charged clients one-third of their recovery in TCPA cases. After several years of TCPA experience, Burke Law Offices, LLC raised its fees for TCPA cases rate to 40%; a percentage that is still in use today. Burke Decl. ¶ 13.

Under these circumstances, the Court should give weight to the agreement of the plaintiff and his counsel regarding reasonable fees as *prima facie* evidence of the market rate. *Stumpf v. PYOD, LLC*, No. 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market."); *see also Mangone,* 206 F.R.D. at 226 (requiring weight to the judgment of the parties and their counsel where, as here, the fees were agreed to through arm's length negotiations after the parties agreed on the other key deal terms). As shown above, the parties' private, arms-length negotiations have yielded a result fully consistent with the market for legal fees.

### C. <u>The Requested Fee is Appropriate Given Other Considerations, Too.</u>

In addition to analyzing the market price for legal services from analogous cases, courts may examine "'the risk of nonpayment a firm agrees to bear, . . . the quality of its performance,

. . . the amount of work necessary to resolve the litigation, and . . . the stakes of the case.'" *See Sutton*, 504 F.3d at 691; *Silverman*, 2012 WL 1597388, at *1 (N.D. Ill. May 7, 2012) (noting that compensation may depend "on the quality of [counsel's] performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.") (quoting *Synthroid*, 264 F.3d at 721) (citation omitted). Each factor supports the requested fee.

a.     ***Risk of Nonpayment Supports the Requested Fee.***

Prosecution of this action has involved significant risk. As noted above, Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary costs and expenses, and knowing that there would only be a fee if there were a recovery. Burke Decl., <u>Exhibit A</u>, ¶ 12; Kleinpeter Decl., <u>Exhibit B</u>, ¶¶ 12-13. Although this case settled before large costs were necessary, Class Counsel was ready to advance the cost of, for example, expert witnesses on the issue of whether the equipment used to call plaintiff and the class was an "automatic telephone dialing system" under the TCPA. *See Scott v. Westlake Servs., LLC*, 740 F.3d 1124, 1127 (7th Cir. 2014). ("Whether a call is 'dialer-generated' within the meaning of the TCPA is a hotly contested issue on the merits.") (citation omitted). Class Counsel was also prepared to pay for any other costs associated with the litigation, such as class notice, depositions, and travel. Of course, had plaintiff not prevailed, no funds would have been recoverable from the class members, for whose benefit they were expended.

Further, Class Counsel worked on this case for more than a year before settlement was ultimately reached, and only after the parties had engaged in significant discovery, in-person mediation sessions with Judge Andersen on October 21, 2013 and later on March 20, 2014, a telephonic mediation session on October 31, 2013, and numerous additional informal arms-

length negotiations through Judge Andersen or among counsel. (Burke Dec. ¶14; Agr. at 1-2.) At no time before the papers were executed was it ever clear that this case would be resolved through settlement. Even as Class Counsel writes this brief, there still exists a real risk that they may not get paid.

The risks associated with taking and litigating any particular case depend upon factual particulars and the legal landscape within which those facts will be applied. In this case, both the facts and law were perilous. For example, TruGreen's Answer reveals that it intended to argue multiple affirmative defenses, including that individual issues concerning whether any particular class member consented to receive calls predominated over class issues. The answer also indicates that TruGreen intended to argue that class members were subject to binding, individual arbitration. (Dkt. No. 29, Answer at 8-9.)

Absent settlement, Class Counsel would have faced fierce opposition from formidable defense counsel at class certification, particularly because courts are divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding that no evidence supported the view that issues of consent would be individualized).Moreover, there are currently approximately forty-nine petitions under consideration at the FCC, the vast majority of which were filed by Industry groups asking that the TCPA's prohibitions be loosened. And although the undersigned is active

in lobbying the FCC to maintain the *status quo*, a catastrophic adverse ruling could have happened at any time, potentially rendering this case worthless.

Further, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations."). This settlement provides the members of the class with the opportunity to obviate all risk associated with all defenses, and allows them to recover substantial money with no need to prove their case in court.

Finally, there is the risk of losing a jury trial. And, even if plaintiff did prevail, any recovery could be delayed for years by an appeal. Any potential statutory recovery in this case would likely be impossible to recover as a factual matter due in part to the fact that TruGreen would have every incentive to litigate appeals of any such judgment as far as possible over many years. The settlement provides substantial relief to the class—a total settlement amount of $4,450,000—without further delay.

While plaintiff is confident in the viability of his claims, success is by no means assured, and litigating these issues would have required significant additional expenditure of time, money, and resources for which Class Counsel would not be compensated should plaintiff lose on summary judgment, fail to certify a class, or lose at trial.  *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028 (N.D. Ill. 2011) (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); *see also Elkins v. Medco Health Solutions, Inc.*, No. 12-2141, 2014 WL 1663406, at *10 (E.D. Mo. Apr. 25, 2014) (granting summary judgment against Plaintiff in TCPA class case); *Jamison*, 290 F.R.D. at 102-09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Greene v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against Plaintiff in TCPA class case).

In sum, the risk undertaken by Class Counsel, therefore, supports awarding the requested attorneys' fees.  *See, e.g., Sutton*, 504 F.3d at 694 ("[T]here is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit....  Because the district court failed to provide for the risk of loss, the possibility exists that Counsel, whose only source of a fee was a contingent one, was undercompensated.") (citation omitted).

### b.    *Class Counsel's Performance Supports the Requested Fee.*

By applying their skills and experience in consumer litigation generally, and particularly in TCPA and class action litigation, Class Counsel achieved an outstanding result in the face of a resolute defense.  As discussed above, the Settlement affords the class a settlement amount of

$4,450,000, enabling Settlement Class Members to receive a *pro rata* share of the Distributable

Settlement Fund of up to the $500 afforded under the TCPA, 47 U.S.C. § 227(b)(3). Based on the

anticipated claim form submission rate, Class Counsel estimate that each Settlement Class

Member who submits a valid claim form will receive in excess of $150, which is more recovery

per class member than most other similar TCPA settlements.

The Settlement was reached after not only extensive factual investigation and discovery

into the claims and issues relevant to this case, but also numerous arms-length negotiations,

including multiple formal mediations before an experienced third-party neutral.  The

settlement amount affords substantial monetary relief to the class, a direct result of the

dedication, skill, and experience of Class Counsel for which they should be fairly compensated.

*See, e.g., Schulte*, 805 F. Supp. 2d at 598 ("[T]he quality of Class counsel's performance in th[e]

litigation favors approval of the fees requested. Class counsel have navigated a complicated

case and have negotiated a Settlement Agreement that provides significant benefits to the

Class Members."); *see also Redman*, 768 F.3d at 633 ("We have emphasized that in determining

the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central

consideration is what class counsel achieved for the members of the class rather than how

much effort class counsel invested in the litigation.").

**c.**  ***The Amount of Work by Class Counsel Supports the Requested Fee.***

Class Counsel have devoted significant time to investigating, litigating, and settling this

case, and have made considerable outlays of time and money by, among other things, (1)

investigating this action; (2) conducting legal research; (3) conducting discovery; (4) negotiating

the settlement over several months, including by participating in multiple all-day mediation

- 15 -

sessions and numerous other arms-length negotiations with defense counsel; and (5)
responding to class member inquiries. Burke Decl., Exhibit A, ¶¶ 14-15; Kleinpeter Decl.,
Exhibit B, ¶¶ 15-16.

Overall, Class Counsel's efforts have been substantial, and the amount of work supports
the requested fee. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 WL 3282591, at
*2 (approving one-third fee where, inter alia, counsel engaged in "the amount of work
necessary to resolve the litigation").

### d. The Stakes of the Case Support the Requested Fee.

This action involves approximately 214,000 Class Members to whom defendant
allegedly made unlawful, autodialed calls to their cell phones. Had class members filed TCPA
cases on their own, and prevailed, they would have been able to recover a minimum of $500
per violation. *Holtzman v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). Plaintiffs that can show that
violations were willful may request treble damages. 47 U.S.C. §227(b)(3). But, of course, class
members would have had to do a lot of work to obtain these results, and pay a lawyer, incur
the $400 filing fee in federal court, potentially sit for a deposition or testify at trial, etc. This
settlement provides class members with the opportunity to receive more than $150 each,
without any work at all other than submitting a claim form by mail or online.

Those who wish to pursue such litigation can, of course, opt out of the settlement, and
seven such individuals have decided to exclude themselves. In light of the high number of class
members who likely would not have received *any* relief without the assistance of Class
Counsel—and the meaningful amount recovered, expected to be in excess of $150 for each

class member who submits a valid claim form—the settlement compares very favorably with the stakes of the case, and the requested fee is reasonable and should be awarded.

      **D.**    ***Redman v. RadioShack* Is Inapplicable to this Common Fund, Cash Settlement.**

Class Counsel respectfully submit that this case is fundamentally distinct from the Seventh Circuit's recent decision in *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), such that its holding does not apply. *Redman* involved a coupon settlement in which direct notice went to a third of the class, resulting in a very low claims rate. The administrative costs were also deemed "excessively" high—$2.2 million for a notice plan that did not reach even half of the class. The Court found that, under CAFA, attorneys' fees awarded for purely coupon settlements must be evaluated based on the coupons' redemption value, and no such evaluation was made. *Redman*, 768 F.3d at 629-38. Even if the full face value of the coupons were considered, at $830,000, they totaled less than the requested attorneys' fees of $1 million. *Id.* at 630. The Court found that, given that few class members had knowledge of the settlement and submitted claims (resulting in miniscule benefits), including the $2.2 million in administrative costs in the calculation of attorneys' fees "eliminated the incentive of class counsel to economize on that expense" and "may have created a perverse incentive[.]" *Id.* Thus, it was not fair, reasonable, or adequate under the circumstances to include administrative costs as part of the theoretical settlement "fund" from which a percentage of attorneys' fees could be extracted.

In contrast, here Class Members are receiving cash payments—not coupons—from a settlement fund totaling $4,450,000. (Agr. ¶ 2.36, § V.) And, direct notice in this case was provided to the entire class, further supplemented by a settlement website maintained by the

settlement administrator, and with several weeks left in the class period more than 6.5% of class members have submitted claim forms. In *Redman*, direct notice was only provided to approximately 31% of the class, of whom only approximately 0.5% eventually submitted claims. *Redman*, 768 F.3d at 628.

While the claims deadline is still approximately a month away, the initial response to the settlement here has been overwhelmingly positive, with no objections, only seven exclusion requests. Class Counsel therefore maintain that the requested award of Attorneys' Fees of $1,483,333.33 is fair, reasonable, and adequate.[3]

### E.   The Proposed Class Representative Award Is Reasonable.

Incentive awards compensate named plaintiffs for work done on behalf of the class by attempting to account for financial, personal, or reputational risks associated with litigation, and promote public policy goals by encouraging plaintiffs to step forward on behalf of unnamed class members.  The requested incentive award of $12,000 for the class representative is well justified and supported by case law in this District.

In addition to lending his name to this matter, thereby subjecting himself to public attention, plaintiff was actively engaged in this action.  Among other things, he: (1) provided information to Class Counsel for the Complaint and other filings; (2) reviewed pleadings and other documents; (3) communicated on a regular basis with Class Counsel and kept informed of

---

[3] Unlike in *Redman*, Class Members in this case will receive actual cash benefits on a *pro rata* basis from a static distributable settlement fund after administrative costs and any attorneys' fees and incentive award are awarded; the amount of distributable settlement funds to class members is not contingent on how many submit claims.

progress in the litigation and settlement negotiations; and (4) approved the Settlement.  Burke

Decl., Exhibit A,  ¶ 16; Kleinpeter Decl., Exhibit B,  ¶ 17.

Given the total $4,450,000 settlement amount obtained for the class and current 5%

claim form submission rate—and accounting for an estimated $250,000 in administration costs

and $1,483,333.33 in requested attorneys' fees—a $12,000 incentive award to plaintiff will

have no significant impact on the amount each individual Settlement Class Member will receive

after submitting a valid claim form under the settlement.

Further, the amount requested here, $12,000, is on par with or even less than incentive

awards approved by federal courts in Illinois and elsewhere.  *See, e.g., Cook v. Niedert*, 142 F.3d

1004, 1016 (7th Cir. 1998) (upholding award of $25,000 to class representative); *In re Sw.*

*Airlines Voucher Litig.*, No. 11-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding

$15,000 each to two named plaintiffs); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-

2898, 2012 WL 651727, at *16-17 (N.D. Ill. Feb. 28, 2012) (a $25,000 incentive award is a

reasonable one); *Kraft Foods Global, Inc.*, 2012 U.S. Dist. LEXIS 166816, at *8 (awarding $15,000

each to four named plaintiffs).  It is also in line with – and actually below – many of the service

awards frequently awarded in TCPA cases.[4]

Accordingly, Class Counsel respectfully requests that the Court approve an incentive

award of $12,000 to the class representative, Faustino Chapa, IV.

---

[4] *See Martin v. Dun & Bradstreet, Inc.*, No. 12-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 66) (awarding $20,000 incentive award to named plaintiff); *Hanley v. Fifth Third Bank*, No. 12-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding named plaintiff a $25,000 incentive award); *Desai v. ADT Sec. Servs., Inc.*, No. 11-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving incentive awards of $30,000 each to two named plaintiffs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) ($25,000 incentive award).

IV.     **CONCLUSION**

WHEREFORE, for the foregoing reasons, Class Counsel respectfully requests that the

Court grant this motion and award Class Counsel attorneys' fees in the amount of

$1,483,333.33, representing one-third of the total settlement amount.  Class Counsel further

requests that the Court approve an incentive award of $12,000 to the class representative,

Faustino Chapa, IV.


Respectfully submitted,


/s/Alexander H. Burke


Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
aburke@burkelawllc.com

Amy Clark Kleinpeter (admitted *pro hac vice*)
HILL COUNTRY CONSUMER LAW
11940 Jollyville Rd., Suite 220-S
Austin, TX 78759
(512) 850-5290
amyck1@gmail.com

*Counsel for Plaintiff and the Class*

# Exhibit A

Declaration of Alexander H. Burke

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FAUSTINO CHAPA, IV, on behalf of himself and others similarly situated, | ) ) ) | No. 1:13-cv-3957 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TRUGREEN, INC., | ) ) | Hon. Judge Harry D. Leinenweber |
| Defendant. | ) ) | |

## DECLARATION OF ALEXANDER H. BURKE

I, ALEXANDER H. BURKE, declare as follows:

1.      I am Alexander H. Burke, manager of Burke Law Offices, LLC. I submit this declaration in support of my firm's application for attorney's fees and class representative award in connection with the class settlement in this matter. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      In September 2008, I opened Burke Law Offices, LLC. The firm—consisting of myself and a recently-hired associate—focuses on consumer class action and consumer work on the plaintiff side.  Since around the time the firm began, it has focused on prosecuting cases pursuant to the Telephone Consumer Protection Act. The firm works almost exclusively on a contingency basis.

3.      I am regularly asked to speak regarding TCPA issues, on the national level. For example, I conducted a one-hour CLE on prosecuting TCPA autodialer and Do Not Call claims pursuant to the Telephone Consumer Protection Act for the National Association of Consumer Advocates in summer 2012, and spoke on similar subjects at the annual National Consumer Law

1

Center national conferences in October 2012, November 2013, and November 2014.

4.      I also am actively engaged in policymaking as to TCPA issues, and have had several meetings with various decision makers at the Federal Communications Commission, advocating on behalf of consumers. With the National Consumer Law Center, my firm co-authored comments in response to a petition before the FCC addressing the TCPA, which was ultimately joined by several additional public interest groups, including Public Citizen and Consumers Union.

5.      I make substantial efforts to remain current on the law, including class action issues. I attended the National Consumer Law Center Consumer Rights Litigation Conference each year from 2006 through 2013, and was an active participant in the Consumer Class Action Intensive Symposium at each of those conferences. In October 2009, I spoke on a panel of consumer class action attorneys welcoming newcomers to the conference. In addition to regularly attending Chicago Bar Association meetings and events, I was the vice-chair of the Chicago Bar Association's consumer protection section in 2009, and the chair in 2010. In November 2009, I moderated a panel of judges and attorneys discussing recent events and decisions concerning arbitration of consumer claims and class action bans in consumer contracts. I spoke in November 2014 as to TCPA issues, as well.

6.      Some notable autodialer TCPA class and individual actions that my firm has worked on include: *Smith v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 228892, (N.D. Ill. Jan. 21, 2014) (designating me as pursuant to Fed.R.Civ.P. 23(g) as interim liaison counsel pursuant to contested motion in large TCPA class case), 2014 WL 3906923 (Aug. 11, 2014) (motion to dismiss denied in cutting edge vicarious liability case); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014) (motion to strike TCPA class allegations denied in relevant

part); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (final approval for $4.5 million nonreversionary TCPA settlement granted December 27, 2013); *Markovic v. Appriss, Inc.*, 2013 WL 6887972 (S.D. Ind. Dec. 31, 2013) (motion to dismiss denied in TCPA class case); *Martin v. Comcast Corp.*, 2013 WL 6229934 (N.D. Ill. Nov. 26, 2013) (motion to dismiss denied in TCPA class case); *Gold v. YouMail, Inc.*, 2013 WL 652549 (S.D. Ind. Feb. 21, 2013); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Aug. 21, 2012) (Denlow, J.) (certifying litigation class and appointing me as sole class counsel) (July 16, 2013) (final approval granted for $7.5 million class settlement granted January 16, 2014); *Desai v. ADT, Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (final approval for $15 million TCPA class settlement granted); *Martin v. CCH, Inc.*, No. 10-3494 (N.D. Ill.) (Mar. 20, 2013) (final approval granted for $2 million class settlement in TCPA autodialer case); *Swope v. Credit Management, LP*, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013) (denying motion to dismiss in "wrong number" TCPA case); *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838 (N.D. Ill. Aug. 10, 2012) (denying motion to dismiss TCPA case on constitutional grounds); *Soppet v. Enhanced Recovery Co.*, 2011 WL 3704681(N.D. Ill. Aug 21, 2011), *aff'd*, 679 F.3d 637 (7th Cir. 2012) (TCPA defendant's summary judgment motion denied; my participation limited to litigation in the lower court); *D.G. ex rel. Tang v. William W. Siegel & Assocs., Attorneys at Law, LLC*, 2011 WL 2356390 (N.D. Ill. Jun 14, 2011); *Martin v. Bureau of Collection Recovery*, 2011WL2311869 (N.D. Ill. June 13, 2011) (motion to compel TCPA class discovery granted); *Powell v. West Asset Management, Inc.*, 773 F. Supp. 2d 898 (N.D. Ill. 2011) (debt collector TCPA defendant's "failure to mitigate" defense stricken for failure to state a defense upon which relief may be granted); *Fike v. The Bureaus, Inc.*, No. 09-cv-2558 (N.D. Ill. Dec. 3, 2010) (final approval granted for $800,000 TCPA settlement in autodialer case against debt collection agency); *Donnelly v. NCO Financial*

*Systems, Inc.*, 263 F.R.D. 500 (N.D. Ill. Dec. 16, 2009) (Fed.R.Civ.P. 72 objections overruled in toto), 2010 WL 308975 (N.D. Ill. Jan 13, 2010) (novel class action and TCPA discovery issues decided favorably to class).

7.   My team and I were recently appointed class counsel by Judge Durkin in a contested motion for class certification in *Gomez v. PNC Bank, Nat'l Ass'n*, --- F.Supp.2d ----, 2014 WL 3640798 (N.D. Ill. Jul. 24, 2014), a Fair Labor Standards Act collective action, with parallel state law claims.

8.   Before I opened Burke Law Offices, LLC, I worked at two different plaintiff boutique law firms doing mostly class action work, almost exclusively for consumers. Some decisions that I was actively involved in obtaining while at those law firms include: *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill. 2008) (FCRA class certification granted); 542 F. Supp. 2d 842 (N.D. Ill. 2008) (plaintiffs' motion for judgment on pleadings granted); *Harris v. Best Buy Co.*, No. 07-2559, 2008 U.S. Dist. LEXIS 22166 (N.D. Ill. March 20, 2008) (class certification granted); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D. Ill. 2008) (FCRA class certification granted); *Redmon v. Uncle Julio's, Inc.*, 249 F.R.D. 290 (N.D. Ill. 2008) (FCRA class certification granted); *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (FCRA class certification granted), *aff'd upon objection* (Mar. 28, 2008); *Harris v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 76012 (N.D. Ill. Oct. 10, 2007) (motion to dismiss in putative class action denied); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) (appeal bond required for potentially frivolous objection to large class action settlement, and resulting in a $12.5 million settlement for Massachusetts consumers); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, No. 04-5759, 2006 U.S. Dist. LEXIS 19624 (N.D. Ill. March

30, 2006) (class certification granted); *Nichols v. Northland Groups, Inc.*, Nos. 05-2701, 05-5523, 06-43, 2006 U.S. Dist. LEXIS 15037 (N.D. Ill. Mar. 31, 2006) (class certification granted for concurrent classes against same defendant for ongoing violations); *Lucas v. GC Servs., L.P.*, No. 03-498, 226 F.R.D. 328 (N.D. Ind. 2004) (compelling discovery); 226 F.R.D. 337 (N.D. Ind. 2005) (granting class certification); *Murry v. America's Mortg. Banc, Inc.*, Nos. 03-5811, 03-6186, 2005 WL 1323364 (N.D. Ill. May 5, 2006) (Report and Recommendation granting class certification), *aff'd*, 2006 WL 1647531 (June 5, 2006); *Rawson v. Credigy Receivables, Inc.*, No. 05-6032, 2006 U.S. Dist. LEXIS 6450 (N.D. Ill. Feb. 16, 2006) (denying motion to dismiss in class case against debt collector for suing on time-barred debts).

9. I graduated from Colgate University in 1997 (B.A. International Relations), and from Loyola University Chicago School of Law in 2003 (J.D.). During law school I served as an extern to the Honorable Robert W. Gettleman of the District Court for the Northern District of Illinois and as a law clerk for the Honorable Nancy Jo Arnold, Chancery Division, Circuit Court of Cook County. I also served as an extern for the United States Attorney for the Northern District of Illinois and was a research assistant to adjunct professor Honorable Michael J. Howlett, Jr.

10. I was the Feature Articles Editor of the Loyola Consumer Law Review and Executive Editor of the International Law Forum. My published work includes International Harvesting on the Internet: A Consumer's Perspective on 2001 Proposed Legislation Restricting the Use of Cookies and Information Sharing, 14 Loy. Consumer L. Rev. 125 (2002).

11. I became licensed to practice law in the State of Illinois in 2003 and the State of Wisconsin in March 2011, and am a member of the bar of the United States Court of Appeals for the Seventh and First Circuits, as well as the Northern District of Illinois, Central District of

Illinois, Southern District of Illinois, Eastern District of Wisconsin, Northern District of Indiana, Southern District of Indiana and the District of Nebraska. I am also a member of the Illinois State Bar Association, the Seventh Circuit Bar Association and the American Bar Association, as well as the National Association of Consumer Advocates.

12.    The above experience, qualifications, decisions and settlements demonstrate my ability and commitment to prosecuting TCPA class cases. Moreover, Burke Law Offices, LLC took this matter on a contingency fee basis, which means that the firm would receive no remuneration absent a settlement or judgment. This matter has required me to spend time and resources that could have been spent on other matters. Because I undertook representation of this matter on a contingency fee basis, my firm shouldered the risk of expending substantial costs and time in litigating the action without any monetary gain in the event of an adverse judgment.

13.    The contract my firm entered into with plaintiff Faustino Chapa, IV calls for the client to pay, on a contingency basis, 40% of the total amount of any judgment or settlement after costs had been deducted. Because I had focused on TCPA cases for quite some time and believed the market would bear such, in around 2010, I raised my contingency fee to 40%, after costs. I have not had any potential clients balk at a 40% fee, and based upon conversations with other TCPA lawyers in Chicago, I am confident that the market rate for plaintiff contingency representation for this kind of case is between one-third and 40%.

14.    Obtaining this excellent result for the class in this matter was no easy task. It involved heated and adversarial discussions regarding discovery and settlement. Several times negotiations fell apart completely, and the parties lost hope and moved the case forward on a litigation and discovery track. However, after two in-person mediations with Judge Andersen (Ret.) of JAMS, and numerous informal, arms-length settlement discussions between counsel,

6

the instant settlement was reached. The parties did not discuss attorney's fees until after the rest of the settlement had been agreed upon.

15.     I was involved in this action from the beginning, including investigation of the claims and legal research. I also conducted discovery and negotiated the terms of this settlement. I received numerous telephone calls from class members in this matter. I personally fielded each of these telephone calls, answered any questions class members posed, and gave advice when appropriate.

16.     Faustino Chapa, IV, the representative plaintiff, played a real role in this litigation. My co-counsel and I consulted with Mr. Chapa, and he gave helpful insight and careful consideration to the case, from pre-filing investigation, through ultimately approving this settlement for the benefit of hundreds of thousands of others.

17.     Based upon my previous experience as noted above, I believe this settlement, and the requested fee, to be fair and reasonable under the circumstances and in the best interest of the class. The settlement not only provides substantial monetary recovery to the class, but it will serve as a strong deterrent to future conduct by other actors considering activities proscribed by the TCPA.

18.     Based upon communications with the claims administrator, Dahl Administration, I understand that as of November 17, 2014, 14,142 claims had been received, along with 7 opt-outs. Neither the claims administrator nor counsel have received any objections.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge information and belief.

November 18, 2014, Evanston, Illinois                Alexander H. Burke

7

# Exhibit B

Declaration of Amy Clark Kleinpeter

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FAUSTINO CHAPA, IV, on behalf of himself and others similarly situated, | ) ) ) | No. 1:13-cv-3957 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| TRUGREEN, INC., | ) ) | Hon. Judge Harry D. Leinenweber |
| Defendant. | ) ) | |

## DECLARATION OF AMY E. CLARK KLEINPETER

I, AMY E. CLARK KLEINPETER, declare as follows:

1.     My name is Amy E. Clark Kleinpeter. I am the owner/attorney for Hill Country Consumer Law and I submit this declaration in support of my firm's application for attorney's fees and class representative award in connection with the class settlement in this matter. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.     In 2010, I opened Hill Country Consumer Law in Austin Texas. Previously I was a solo attorney from 2006-2010 in the San Gabriel Valley of California. I focus on consumer cases, including but not limited to class actions. I exclusively represent consumers. Since around the time the firm began, I have been prosecuting cases pursuant to the Telephone Consumer Protection Act. The firm works almost exclusively on a contingency basis.

3.     I am regularly asked to speak regarding consumer issues on the national level. For example, I recently spoke at the 2014 National Consumer Law Center Consumer Rights conference regarding how one individual case can effect change. I have also spoken in May 2014 and in August 2012, at the National Association of Consumer Attorneys bi-annual

1

autofraud conference on the topics of Research and Investigating of claims, marketing and Lemon Law claims in state court in 2014 and on Presenting Closing Arguments and Listening to and Responding to Defendants' Closing arguments on a two-person panel with Vincent Megna of Wisconsin in 2012. In 2010, I presented a 2 hour CLE on the TCPA, FDCPA and Rosenthal Act to the Consumer Bankruptcy Attorneys of Central District California, and I was a panel member at "Current Issues in Mortgage Foreclosures", a presentation at the American Bar Association GP|Solo Meeting and National Solo & Small Firm Conference in Los Angeles, 2009.

4. I currently am the Co-Chair of the National Association of Consumer Attorneys Automobile Legislative Committee. Additionally, I testify every session at the Texas Legislature, where I provide evidence and commentary on consumer issues involving debt collection and payday and title loans.

5. I am the author of multiple articles published in the ABA GP|Solo Magazine, including "The Lie Behind Foreclosure Rescue" in 2010, "Educating Your Client" in 2008, as well as the frequently re-printed article, "Work Life Balance 101" originally published in the Young Lawyers' Division Newsletter in 2007.

6. Additionally, I have been interviewed on consumer rights regarding toll road billing on Fox News in 2014 and utility billing practices by KEYE TV (CBS) in Austin, Texas in 2011. I was the featured attorney on the 2007 ABC News Special, "The High Cost of Debt" on KABC, and was also interviewed for the 2007 KABC news story on foreclosure rescue scams. I have also been cited by numerous print and blog articles, including a 2014 New York Times article on GPS/ignition stop gadgets installed on vehicles and a 2014 Huffington Post on debt lawsuits. I

have also been quoted in the past on suing debt settlement scams, and I was featured on Patt Morrison's NPR show focusing on bankruptcy in 2008.

7.   I have been lead counsel in numerous consumer law cases in state and federal court, generally representing approximately fifty Central Texas consumers per year on consumer claims including TCPA, TILA, fraud, and other credit and debt issues.

8.   In February 2012, I was lead counsel on the first jury trial in recent years against a debt settlement company, *Ramos v. Debt Resolution Center, et. al.*, Case No. 30-2010-00415775 in California State Court in Orange County, California. The case did settle pre-verdict.

9.   I make substantial efforts to remain current on the law, including class action issues. I attend the National Consumer Law Center Consumer Rights Litigation Conference most years from 2009 through 2014, and I attended the Consumer Class Action Intensive Symposium at the 2013 conference.

10.  Auto-dialer TCPA cases that my firm has worked on include: *Ashlee Rogers v. Navient Solutions, Inc. DBA Sallie Mae*; 6:14-53 in Southern District of Texas, 2014, *Dwight Crump v. GILA, LLC, d/b/a Municipal Services;* 1-14-cv-00440-LY in Western District of Texas, 2014; *Leslie Mock v. Cardworks Servicing, LLC. et. al.* 1:12-cv-747-SS in Western District of Texas, 2012; where I successfully fought a motion to compel arbitration; *Henry Algerimisson v. Compass Bancshares, Inc. et. al.* D-1-GN-11-000216 in the District Court, Travis County, Texas in 2011.

11.  Before I opened Hill Country Consumer Law, I worked as a civil litigation associate at Squire, Sanders & Dempsey in their Los Angeles Office and then at Doumanian & Associates in Pasadena, California practicing employee and management-side employment law and defense of public entities. I became licensed to practice law in the State of California in 2002 and the State

3

of Texas in 2007, and am a member of the bar of the United States Court of Appeals for the Ninth Circuit, as well as the Western District of Texas, United States District Court, Central District of California and the Supreme Court of California. I am also a member of the Texas State Bar Association.

12. The above experience, qualifications, decisions and settlements demonstrate my ability and commitment to prosecuting TCPA cases. Hill Country Consumer Law took this matter on a contingency fee basis, which means that the firm would receive no remuneration absent a settlement or judgment. This matter has required me to spend time and resources that could have been spent on other matters. Because I undertook representation of this matter on a contingency fee basis, my firm shouldered the risk of expending substantial costs (including travel from Austin) and time in litigating the action without any monetary gain in the event of an adverse judgment.

13. The contract my firm entered into with plaintiff Faustino Chapa, IV calls for the client to pay, on a contingency basis, 40% of the total amount of any judgment or settlement after costs had been deducted. I have not had any potential clients balk at a 40% fee, and based upon conversations with other contingency lawyers in Austin, Texas, I am confident that the market rate for plaintiff contingency representation for this kind of case is 40%.

14. Obtaining this excellent result for the class in this matter was no easy task. It involved heated and adversarial discussions regarding discovery and settlement. Several times negotiations fell apart completely, and the parties lost hope and moved the case forward on a litigation and discovery track. However, after two in-person mediations with Judge Andersen (Ret.) of JAMS in Chicago, both of which I attended in person, and numerous informal, arms-length settlement discussions between counsel, the instant settlement was reached.

4

15. I received numerous telephone calls from class members in this matter. I personally talked to these class members and answered their questions and gave advice when appropriate. Many remembered the autodialed calls from Trugreen and called just to tell me that they were so mad about those calls and were glad to get the settlement papers. Discussions with the class members took time but brought me satisfaction as well.

16. Faustino Chapa, IV, the representative plaintiff, played a substantial role in the litigation. I consulted with Mr. Chapa, and he gave helpful insight throughout every step of the way in this case, from pre-filing investigation, drafting pleadings, developing a case strategy, and of course, negotiating this settlement.

17. Based upon my previous experience as noted above, I believe this settlement, and the requested fee, to be fair and reasonable under the circumstances and in the best interest of the class. The settlement not only provides substantial monetary recovery to the class, but it will serve as a strong deterrent to future conduct by other actors considering activities proscribed by the TCPA.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 18th day of November, 2014 in Austin, Texas.

Amy E. Clark Kleinpeter